## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CRIMINAL ACTION NO. |
| v. | : | 3:00-cr-263 (JCH) |
| | : | |
| KELVIN BURDEN, | : | AUGUST 23, 2021 |
| Defendant. | : | |

### RULING RE: MOTION FOR RECONSIDERATION ON
### MOTION FOR REDUCTION OF SENTENCE (DOC. NO.  2630)

Defendant Kelvin Burden ("Mr. Burden") filed a Motion and Memorandum of Law

in Support of reconsideration of the court's Ruling denying his Renewed Motion for

Compassionate Release (Doc No. 2630).  In that Motion, he requests the court to

consider again his prior request for release under the compassionate release provisions

of the First Step Act.  However, in the current pending Motion, Mr. Burden alters his

request:  he now seeks a reduction of his sentence from 30 years to 25 years.

Mr. Burden had previously filed a pro se Motion for Compassionate Release for

immediate release under section 3582(c)(1)(A)(i) of title 18 of the United States Code

on August 14, 2020 (Doc. No. 2589).  The essence of his arguments in his pro se

Motion were that, given his various medical conditions, he was at great risk if he

contracted COVID-19.  Subsequently, the court appointed counsel, who filed a

counseled Motion on September 30, 2020.  Mot. for Reduction of Sentence (Doc. No.

2602).

The court held a 2-hour compassionate release hearing on the Motions.  See

Transcript (Doc No. 2614).  While finding that Mr. Burden's medical conditions, given

the then unchecked spread of COVID-19, did present extraordinary circumstances, the

court nonetheless denied his Motions on the ground that the factors in section 3553(a) of title 18 of the United States Code (the "section 3553(a) factors") - in particular, the seriousness of his offenses and the nature and circumstances of his crimes - militated against any reduction in his 365-month sentence.

Upon review of Mr. Burden's current pending Motion, consideration of the matters previously before the court in his initial Motion, and the changed circumstances, the court continues to conclude that, even if there are extraordinary circumstances present, the section 3553(a) factors again warrant against reducing Mr. Burden's sentence.

## I.    BACKGROUND

On February 11, 2003, after a lengthy jury trial, the jury convicted Mr. Burden of all charges pending against him, except Counts Four and Eleven.  Subsequently, the court sentenced Mr. Burden to concurrent terms of life on Counts One, Two, Eight, Twelve, and Fourteen, and ten years of imprisonment on Counts Three, Five, Six, Seven, Nine, and Ten.  The life sentence imposed for Counts Eight and Twelve were mandatory.  The relevant conduct encompassed within the counts of conviction included a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and RICO conspiracy; various violent acts in aid of racketeering, including conspiracy to murder, attempted murder, and murder; and, conspiracy to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine.  Evidence at trial that supported this Verdict included evidence of a substantial drug enterprise involving cocaine and crack cocaine, that existed for a substantial period of time in Bridgeport, Connecticut, and was led by Mr. Burden.  In connection with the drug activity, the defendants in this

conspiracy engaged in numerous acts of gun possession and gun violence that led to the murder of Derek Owens, the crippling of Marque Young, and the attempted murder of Rodrick Richardson, all under the leadership of Mr. Burden.

Mr. Burden appealed, and the Second Circuit Court of Appeals affirmed in part, remanding the sentence pursuant to United States v. Regalado, 518 F.3d 143, 149 (2d Cir. 2008), "to give the district court an opportunity to indicate whether it would have imposed a non-Guidelines sentence knowing that it had the discretion to deviate from the Guidelines to serve [the] objectives [of sentencing under 18 U.S.C. § 3553(a)]".  See United States v. Burden, 600 F.3d 204, 231 (2d Cir. 2010) ("Burden I").   In all other respects the Court of Appeals in Burden 1 affirmed Mr. Burden's convictions and sentence.  Mr. Burden sought and filed a Petition for Writ of Certiorari, which was denied.  See Burden v. United States, 562 U.S. 1169 (2011).  On remand, the court adhered to its original sentence.

Subsequently, in January 2012, Mr. Burden moved to vacate his conviction under section 2255 of title 28 of the United States Code.  Initially, the Government filed an opposition, but thereafter the parties reached a potential resolution of Mr. Burden's section 2255 petition, embodied in a detailed Stipulation. United States v. Burden, 860 F.3d 45, 49 (2d Cir. 2017) ("Burden II").   Contained in that Stipulation was a Rule 11(c)(1)(C) plea agreement to a binding guideline range of 262 to 365 months of incarceration, which the court accepted, and subsequently sentenced Mr. Burden to 365 months of imprisonment.  Various appeals followed the sentencing with an Amended Judgment in 2019 ultimately imposing 365 months of imprisonment followed by 5 years of supervised release.  See Fourth Amended Judgment (Doc. No. 2558).

After that judgment entered, Mr. Burden filed a Motion under the First Step Act seeking immediate release or resentencing.  See Motion to Reduce Sentence – First Step Act (Doc. No. 2574).  After that counseled Motion was filed, counsel moved to withdraw from the case and Mr. Burden filed a pro se motion and memorandum.  (Doc. No. 2581)   After further briefing, this court denied Mr. Burden's First Step Act Motion in March 2020.  Ruling on First Step Act Mot. for Immediate Release of Resentencing (Doc. No. 2585).  Mr. Burden appealed the court's First Step Act Ruling, and the Circuit issued a per curiam decision affirming this court's denial of his First Step Act Motion. Mandate of USCA (Doc. No. 2628).

## II.    STANDARD

### A.  Reconsideration

With regard to reconsideration of the prior ruling, the Second Circuit has explained that "[t]he standard for [reconsideration] is strict, and [it] will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted); see also D. Conn. Local R. Crim. P. 1(c) (applying Local Civil Rule 7(c) to criminal proceedings); D. Conn. Local R. Civ. P. 7(c) (explaining that motions for reconsideration "will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order").

### B.  Compassionate Release

Pursuant to section 3582(c)(1)(A)(i) of title 18 of the United States Code, a court may not modify a term of imprisonment "once it has been imposed" except in a case where, after exhaustion of administrative rights, the court considers that applicable

4

section 3553(a) factors and finds that "extraordinary and compelling reasons warrant

such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i)  In <u>United States v. Brooker</u>, 976 F.3d

228 (2d Cir. 2020), the Second Circuit held that the guideline provisions applicable to

compassionate release motions did not apply to motions brought in court by an inmate

following a denial by the Bureau of Prisons of a compassionate release request.  "In

other words, if a compassionate release motion is not brought by the [Bureau of

Prisons], Guideline § 1B1.13 does not, by its own terms, apply to [the prisoner's motion

in court]. Because Guideline § 1B1.13 is not 'applicable' to compassionate release

motions brought by defendants, Application Note 1(D) cannot constrain district courts'

discretion to consider whether any reasons are extraordinary and compelling."  <u>Id</u> at

236.

III.    **DISCUSSION**

    A.  <u>Reconsideration</u>

    Mr. Burden does not meet the "strict" standard for reconsideration. He has

brought forth little, if anything, that could not have been brought forth in his original

Motion for Compassionate Release.  Certainly, he has not cited any decisions or data

that this court overlooked in its original compassionate release ruling.[1]

    However, the court does not view a "second effort" to obtain compassionate

release under the First Step Act as a reconsideration of the court's original ruling.

Indeed, last year in a Summary Order, the Second Circuit observed that "the denial of a

[Motion for Compassionate Release] generally will not preclude a renewed application

---

[1] Further, the Motion for Reconsideration is not timely under the Local Rules.  <u>See</u> D. Conn. Local R. Crim. P. 1(c) (adopting D. Conn. Local R. Civ. P. 7(c) stating that Motions for Reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought").

based on changed circumstances," such as a change in COVID numbers at a facility.
United States v. Roney, 833 Fed. App'x 850, 855 (2d Cir. 2020) (summary order).
Having concluded that Mr. Burden has failed to meet the strict standard of
reconsideration, the court will nonetheless treat his Motion as a renewed Motion for
Compassionate Release.

      B.  Compassionate Release

      In connection with reconsideration of a Motion for Compassionate Release, the
court must first address whether the defendant has complied with the exhaustion
requirements of section 3582(c)(1)(A)(i).  Mr. Burden does not address this, likely
because he was seeking a reconsideration of a ruling on a motion as to which Mr.
Burden had exhausted.  However, because the court is here addressing the Motion as a
renewed Motion for Compassionate Release, exhaustion is pertinent.  The government
argues Mr. Burden has not exhausted all the grounds in a reconstrued renewal motion.
Gov't Resp. to Def.'s Mot. for Reconsideration of Compassionate Release Ruling at 12
n. 3 ("Gov't Mem.") (Doc. No. 2631).  It does not appear that Mr. Burden has sought
relief through the Bureau of Prisons based on the additional changed circumstances
presented in his Motion to Reconsider.  However, the court will nonetheless address the
merits of his Motion in light of his previous request of the warden, which was denied,
and which preceded his original Motion for Compassionate Release.  The court does so
in order to address the merits and in light of the conclusion it will reach.

      Given that Mr. Burden has structured his Motion as one for reconsideration of a
Ruling in which the court found extraordinary circumstances, it is not surprising that he
does not address the required finding for compassionate release of "extraordinary

circumstances."  18 U.S.C. § 3582(c)(1)(A)(i).  In response to the original Motion for

Compassionate Release, the court concluded that, given his medical conditions and the

risks presented by COVID-19 at that time, Mr. Burden did meet the requirement of

extraordinary circumstances.  However, those circumstances have clearly changed, a

matter of which the court takes judicial notice.  See United States v. Poupart, No. 3:11-

CR-116, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) ("[t]he opportunity for

individually-identifiable inmates to opt to receive the COVID-19 vaccine represents a

sea change from their previous COVID-19 vulnerability"); U.S. v. Bari, 599 F.3d 176,

180 (2d Cir. 2010) ("the traditional textbook treatment . . . has included two categories

for judicial notice: matters of common knowledge and facts capable of verification")

(internal quotations and citations omitted).  While the court assumes he continues to

suffer from the medical conditions that place him at substantial risk if he contracted

COVID-19, inmates like Mr. Burden have the opportunity to receive a vaccine to guard

against contracting COVID-19 and to reduce the risk of getting seriously ill if they are

infected.  See Benefits of Getting Vaccinated, CENTERS FOR DISEASE CONTROL AND

PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html

(last updated Aug. 16, 2021).  Indeed, Mr. Burden was offered the two dosage Pfizer

vaccine in March 2021 by the Bureau of Prisons.  Gov't Mem. at 11.  "Extensive testing

and monitoring have shown that [the Pfizer vaccine is] safe and effective."  See Benefits

of Getting Vaccinated, supra.  Being vaccinated reduces an individual's risk of

contracting COVID-19 and, perhaps more importantly for someone like Mr. Burden,

would "markedly reduce his risk of severe illness or death from COVID-19."  Poupart,

2021 WL 917067, at *1.  Unfortunately, Mr. Burden declined the vaccine.  Gov't Mem. at

11.  There is nothing in the record before this court indicating that he had a medical reason for doing so.  In the absence of such a showing, taking the vaccine would reduce his risk of COVID-19 exposure dramatically.  It cannot be, in this court's view, that an inmate can decline a vaccine which, if taken, will largely avoid the risks which themselves form the basis for his position that extraordinary circumstances exist to justify a reduction in his sentence.  The vaccine offered to him "empowered [Mr. Burden] to reduce the[ ] risks" of COVID-19 himself.   Poupart, 2021 W L917067, at *1.  The court does not find, in treating this as a renewed motion, that Mr. Burden presents extraordinary and compelling circumstances that would meet section 3852(c)(1)(A)(i)'s requirement.

Given that the parties have briefed the issues, and the court has spent significant time reviewing those briefs, the cases cited therein, and the records in the current Motion and the earlier one, it will proceed to consider the section 3553(a) factors aspect of the compassionate release analysis, assuming arguendo that it had found extraordinary and compelling circumstances.

The court will start first with Mr. Burden's argument that other defendants convicted of murder, indeed brutal murders, have received sentence reductions under the First Step Act, some indeed receiving sentences at or below the sentence Mr. Burden seeks in this Motion.  Mr. Burden makes note of the fact that, unlike his prior Motion seeking time served, he now seeks a sentence reduction from 30 years to 25 years.  Unless the court is mistaken, the court's analysis of this request translates into a sentence of approximately 26 years with good time credits applied.[2]  Thus, his request

---

[2] It was clear from the prior records submitted to the court that Mr. Burden has earned all good time credit, at least up to the end of the year.

for a sentence reduction to 25 years is extremely close to the request for a "time served" sentence he originally sought.

The court is familiar with several decisions that have been issued concerning sentence reductions in cases involving murders, including the ones cited by Mr. Burden. The court would note that such decisions turn on the many varied and different circumstances presented by each of the defendants in those cases.  One example is this court's Ruling in the case of the <u>United States v. Cruz</u>.  <u>See</u> <u>United States v. Cruz</u>, No. 3:94-CR-112, 2021 WL 1326851 (D. Conn. Apr. 9, 2021). The court, in issuing the sentence reduction in <u>Cruz</u>, looked not only at good prison records but also family circumstances and need, the characteristics of the defendant both at the time of the commission of his crime and presently, and finally at the overall extraordinary circumstances.  <u>Id.</u>  It is this court's view that Mr. Burden does not now present similar circumstances, and the court notes, as it has repeatedly noted, that the circumstances and nature of the defendant's crime are extremely serious.  It refers to the various hearings that this court held for a complete accounting of those circumstances and the court's assessment of the seriousness of defendant's crime.  <u>See, e.g.</u>, Minute Entry (Doc. No. 2611); Transcript (Doc. No. 2614).  Put briefly, Mr. Burden was the leader of a large drug distribution network operating in Bridgeport for many years.  It involved the distribution of a substantial quantity of drugs.  More significantly, however, it was permeated with violence and guns. The group that Mr. Burden lead, directed, and controlled engaged in numerous shootings resulting in one death, one attempted murder victim, who is a paraplegic and has suffered over 20 years of repeated surgery and excruciating pain, and an attempted murder in which the victim was wounded.  This

gun violence placed many other people at great risk, involving shootings in public places.  Mr. Burden was quick to resort to violence and to direct those whom he led to engage in violence.

By way of contrast, the court would note that, in the Cruz case, Mr. Cruz was barely 18-years old when he was ordered by a gang leader, essentially equivalent to Mr. Burden, to shoot someone who was deemed unfaithful to the drug gang.  Further, unlike Mr. Burden, the court would note that Mr. Cruz had served approximately 31 years. Finally, Mr. Cruz had a family circumstance that provided further support for the finding of extraordinary and compelling reasons.[3]  The court views the circumstances of Mr. Burden's criminal conduct in this case quite different than it did the Cruz case as well as other cases that the court has reviewed, including ones in which the motions for compassionate release have been granted.

As an additional/new ground, Mr. Burden also points to the steps he has taken to remove his novel from the Internet.  His writing and publishing of this novel, with codefendant Jermaine Buchanan, led one of the victims, Marque Young, to express hurt and dismay at the idea that Mr. Burden would benefit financially from writing a book that glorified the criminal lifestyle that Mr. Burden engaged in.  While the court appreciates the steps taken by Mr. Burden to remove his writing from public access and sale, it does not affect the court's earlier decision.  When it originally denied compassionate release, the court noted this publication, but stated it would not be a factor in its decision in

---

[3] This court also presided over three sentencings in another drug and gun conspiracy case, in which the government and defendants agreed to Rule 11(C)(1)(c) plea agreements.  The court sentenced two defendants, who murdered people at the direction of leaders of the gang, to 30-year sentences, and the leader, who committed and ordered many murders, to a 40-year sentence.  These cases are much closer, particularly the latter case, to Mr. Burden's case than Mr. Cruz's case.  See USA v. Benton et al, No. 3:15-cr-00174, Doc. No. 367 (sentencing defendant to 40 years); Doc. Nos. 370, 373 (sentencing defendants to 30 years).

denying the compassionate release at that time.  Thus, it is really not a changed circumstance from the court's point of view.  However, even viewed as a positive step by Mr. Burden, it could not begin to overcome the court's balance of the section 3553(a) factors in his case.

In addition, the court has reviewed Mr. Burden's personal submissions.  <u>See</u> Mot. for Reconsideration, Exs. 2, 3 (Doc. No. 2630-1).  The court notes Mr. Burden is frustrated that others who engaged in violent criminal conduct in Bridgeport have not been punished, <u>e.g.</u>, cooperators and persons who have committed murder.  The court agrees, in an ideal world, that all those who violate the law would be held accountable.  Unfortunately, we do not live in an ideal world.  However, criminal acts by others do not excuse criminal acts by the defendant.

## IV.    CONCLUSION

The court denies the Motion to Reconsider for failure to meet the strict standard for reconsideration.  However, it has proceeded to consider the Motion for Reconsideration as a renewed motion for consideration of compassionate release, on the grounds cited in the new motion as well as those in Mr. Burden's earlier Motion for Compassionate Release, to the extent they continue to exist.   After consideration, the court concludes that there no longer are extraordinary and compelling circumstances present in Mr. Burden's case.  However, even if the court is mistaken and there are, it still concludes that the section 3553(a) factors, in particular the seriousness of Mr. Burden's crimes and the nature and circumstances of his relevant conduct, cannot support a sentence reduction. Therefore, Mr. Burden's Motion (Doc. No. 2630) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 23rd day of August, 2021.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge