UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRMINAL CASE NO. |
| | : | 3:00-CR-00263 (JCH) |
| v. | : | |
| | : | |
| KELVIN BURDEN, | : | |
|     Defendant. | : | JANUARY 8, 2024 |

**RULING ON MOTION FOR REDUCTION IN SENTENCE (DOC. NO. 2651)**

**I.    INTRODUCTION**

Kelvin Burden, who is proceeding pro se, has filed a Second Motion for Reduction in Sentence ("Def.'s Mot.") (Doc. No. 2651).  Mr. Burden seeks a reduction in his sentence for extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A).  The grounds of Mr. Burden's Motion are family circumstances, medical issues, length of time served, and rehabilitation.  See Defendant's Suggestions in Support of Motion for Reduction of Sentence ("Def.'s Mem."), at 1 (Doc. No. 2651).  Mr. Burden has exhausted his administrative remedies.  See Response to Inmate Request to Staff, Def.'s Ex. 3 to Def.'s Mot., at 45 (Doc. No. 2651).

For the reasons stated below, the Motion is denied.

**II.    BACKGROUND**

Mr. Burden was the leader of a violent drug trafficking group that operated in Connecticut from 1997 to 2001.  See United States v. Burden, 600 F.3d 204, 211-12 (2d Cir. 2010).  As described by the Second Circuit Court of Appeals in its denial of Mr. Burden's first direct appeal:

1

> [Kelvin Burden was part of] a group of people who trafficked cocaine and cocaine base in Norwalk, Connecticut from 1997 until 2001. Kelvin Burden supervised the operation. He had sources who supplied him with kilogram quantities of cocaine and cocaine base, he cooked the cocaine and repackaged the drugs for street-level sales, and over time he began coordinating distribution of the drugs to a number of street dealers.

Id. at 211. Beginning in 1998, "the group's activities expanded to include violent acts" in order to grow its narcotic business. Id.

In addition to trafficking kilograms of cocaine over the course of four years, the group's activities, under the leadership of Mr. Burden, resulted in one murder; one assault paralyzing the victim who, after 100 surgeries over the course of 20 years, including a double amputation, died in July of 2021; an attempted murder; and other assaults. See Government's Opposition at 13 (Doc. No. 2658); Letter from Justine L. Young, Gov.'s Ex. A (Doc. No. 2658-1). After conviction by a jury on Counts 1, 2, 3, 5, 6, 7, 8, 9, 10, 12, and 14, Mr. Burden was sentenced to life imprisonment. See Judgment (Doc. No. 1564).

After an unsuccessful direct appeal, Mr. Burden and a co-defendant, Jermaine Buchanan, filed a Petition for a Writ of Habeas in civil action number 3:12-CV-40 (JCH) concerning nondisclosure by the government of some favorable treatment of a cooperating co-defendant, who had recanted in an Affidavit filed in connection with the habeas petitions. See Memorandum in Support of Motion to Vacate, 3:12-CV-40 (JCH) (Doc. No. 1). After much litigation and, as a trial was upcoming, the government, Mr. Burden, and Mr. Buchanan entered into a Stipulation for Re-Sentencing by which the parties would agree to entry of a judgment for petitioners on their Habeas Corpus Petitions, and an 11(c)(1)(C) Plea Agreement, pursuant to which Mr. Burden would plead guilty to Counts 1, 2, 3, 5, 7, 9, 10, 12, and 14, if the court entered a sentence of

262 to 365 months.  See Stipulation for Re-Sentencing, 3:12-CV-40 (JCH) (Doc. No. 69).  The maximum for the counts/post habeas corpus was life, the Guideline calculation was 43/VI, and the Guideline range was life imprisonment.  See id. at 5.  Mr. Burden was then resentenced to a term of imprisonment of 365 months, with credit for time served from October 28, 2002.  See Amended Judgment (Doc. No. 2331).  After that judgment entered,[1] Mr. Burden filed a Motion under the First Step Act seeking immediate release or resentencing.  See Motion to Reduce Sentence – First Step Act (Doc. No. 2574).   After that counseled Motion was filed, counsel moved to withdraw from the case and Mr. Burden filed a pro se Motion and accompanying Memorandum.  See Motion for Reduction of Sentence Under the First Step Act of 2018 (Doc. No. 2581).  After further briefing, this court denied Mr. Burden's First Step Act Motion in March 2020.  See Ruling on First Step Act Motion for Immediate Release or Resentencing (Doc. No. 2585).  Mr. Burden appealed the court's First Step Act Ruling, and the Second Circuit issued a per curiam decision affirming this court's denial of his First Step Act Motion.  See Mandate of USCA (Doc. No. 2628).

    Mr. Burden also filed a Motion for Compassionate Release.  See Motion for Compassionate Release (Doc. No. 2589).  A counseled Motion was then filed for Mr. Burden.  See Renewed Motion for Compassionate Release (Doc. No. 2602).  The court held a two-hour hearing on the Motions, which were principally based on the risk from the Covid-19 pandemic.  After review of all the pleadings and materials submitted, and

---

[1] Mr. Burden appealed that sentence, see Notice of Appeal (Doc. No. 2350), which was granted in part as to the term of supervised release, see Mandate of USCA (Doc. No. 2480).  The court then resentenced Mr. Burden to a sentence consistent with that Mandate.  See Third Amended Judgment (Doc. No. 2504).

the matters raised at the hearing, the court denied, on the record, the Motions for Compassionate Release.  See October 20, 2023 Transcript (Doc. No. 2614).

Mr. Burden then moved to reconsider the court's Ruling.  See Motion for Reconsideration (Doc. No. 2630).  The court denied that Motion to Reconsider for reasons set forth in a written Ruling.  See Order (Doc. No. 2639).  Assuming the standard for reconsideration had been met, the court also reconsidered the Motions and adhered to its Ruling denying the Motion for Compassionate Release.  See id.

### III.   LEGAL STANDARD

Under section 3582(c)(1)(A) of title 18 of the United States Code, as modified by the First Step Act of 2018, an incarcerated defendant may move for compassionate release.  See 18 U.S.C. § 3582(c)(1)(A).  Pursuant to section 3582(c)(1)(A)(i), a court may not modify a term of imprisonment "once it has been imposed" except in a case where, after exhaustion of administrative remedies, the court considers the applicable section 3553(a) factors and finds that "extraordinary and compelling reasons warrant such a reduction."  Id. § 3582(c)(1)(A)(i).  Effective November 1, 2023, section 1B1.13 of the Sentencing Guidelines now applies to motions for "compassionate release" filed by individual defendants under section 3582, see Guidelines Manual § 1B1.13 (2023), and it now includes, inter alia, an expanded list of specified extraordinary and compelling reasons, see id.  The court has considered the Guideline amendments in this Ruling.

### IV.   DISCUSSION

A. Extraordinary and Compelling Circumstances

Mr. Burden rests his argument for a finding of "extraordinary and compelling circumstances" on his health conditions; his status as "the only one who is capable and willing to be a full-time caregiver to his mother and father"; his unusually harsh prison conditions; and his rehabilitation. See Def.'s Mem. at 15-29.  The court will address these grounds in order.

        1.        Medical Conditions and COVID-19

Mr. Burden's medical conditions include latent tuberculosis, deep vein thrombosis, asthma, and hypertension.  See Def.'s Mem. at 20-25.  Of these medical conditions, the Centers for Disease Control and Prevention ("CDC") only identifies asthma and tuberculosis as conclusively presenting a higher risk for getting very sick from Covid-19.[2]  See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals, Ctr. Disease Control (Feb. 9, 2023), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.  Although the court recognizes that Mr. Burden is likely at higher risk of COVID-19 complications than the average individual, the court nonetheless notes that Mr. Burden has been vaccinated against COVID-19.  See COVID-19 Vaccine Consent, Def.'s Ex. 4 to Def.'s Mot., at 47-48 (Doc. No. 2651).  Moreover, as of January 5, 2024, there appears to be only one active case of COVID-19 among staff and inmates in FCI Otisville, where Mr. Burden is currently incarcerated.  See BOP COVID-19 Statistics, Bureau of Prisons,

---

[2] The CDC has found that there is "mixed evidence" as to whether hypertension presents a higher risk of getting very sick from COVID-19.  See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19: Information for Healthcare Professionals, Ctr. Disease Control (Feb. 9, 2023), https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

www.bop.gov/coronavirus/covid19_statistics.html (last visited January 5, 2024).  The court agrees with the government that the protection conferred by the vaccine, in tandem with the extremely low rates of COVID-19 at Mr. Burden's facility, substantially decreases Mr. Burden's risk of serious complications from COVID-19.  The court, therefore, does not view Mr. Burden's medical conditions and COVID-19 risk as presenting extraordinary circumstances.

    2.  Sole Caregiver

 Next, Mr. Burden argues that he is the only person able to provide full-time care to his mother and father.  See Def.'s Mem. at 16-20.  Section 1B1.13 provides that "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" constitutes a ground for compassionate release.  Guidelines Manual § 1B1.13(b)(3)(C).  Currently, Mr. Burden's sister, with the help of her nephew, provides significant assistance to their parents.  See January 13, 2023 Letter from Kesha Dancy to the Honorable Janet C. Hall, Def.'s Ex. 16 to Def.'s Mot., at 138 (Doc. No. 2651); January 8, 2024 Letter from Kesha Dancy to the Honorable Janet C. Hall ("January 8, 2024 Letter"), Def.'s Attach. 1 to Defendant' s Sixth Supplemental Update, at 2 (Doc. No. 2691-1).  It is clearly a challenge for them to do so, and understandably so.  Mr. Burden's mother is 77 years old and suffers from dementia.  Id.; Letter from Kelvin Burden to the Honorable Janet C. Hall, Def.'s Attach 1. to Defendant's Fifth Supplemental Update (Doc. No. 2682).  Mr. Burden's father is 99 years old and cannot care for himself or his wife.  Id.; January 8, 2024 Letter at 1.  While the court is sympathetic to the struggle of Mr. Burden's sister and nephew to meet the needs of Mr. Burden's parents, it is clear he is not the "sole caregiver" available.  His sister and

nephew have provided extraordinary care. Given they have work and other obligations, as do many relatives or elderly persons, they could obtain caregivers. The fact that Mr. Burden and Mrs. Burden resist this alternative is a challenge faced by the children of many elderly parents, but it does not mean it is not an option. Thus, the court cannot conclude that Mr. Burden is the only caregiver available.

### 3. Harsh Conditions Related to COVID-19

Mr. Burden also cites the usually harsh conditions that he has experienced while incarcerated due to COVID-19-related lockdowns. Def.'s Mem. at 25-26. This court is not persuaded that this circumstance, arising during the height of a pandemic, which has since ended, meets the standard for "extraordinary and compelling circumstances".

### 4. Rehabilitation

Lastly, Mr. Burden argues that he is deeply remorseful and sorry for his conduct. See Def.'s Mem. at 28. He notes his participation in all rehabilitation programs available. Id. While the court compliments Mr. Burden on his positive activities while incarcerated, the court does not find that these activities, standing alone, support a finding of extraordinary and compelling circumstances.

### 5. Combination of Factors

Of course, the court can consider all these bases together to determine if Mr. Burden has shown extraordinary and compelling circumstances. Having done so, the court is unpersuaded. As discussed above, the court finds that Mr. Burden's risk of COVID-19 is not significant enough to meet the standard for "extraordinary and compelling circumstances". While the health situation of Mr. Burden's parents is heartbreaking, Mr. Burden is not their sole caretaker. Ostensibly harsh prison

conditions, as discussed above, add little to the combination.  And the court is mindful that rehabilitation alone cannot support a compassionate release finding.  See Brooker, 976 F.3d at 237-38 (noting that rehabilitation, alone, cannot suffice as an extraordinary and compelling reason for a court to grant compassionate release); Guidelines Manual § 1B1.13(d) (same).  The court finds that, even taking the defendant's proffered grounds for compassionate release together, they are insufficient to warrant release.

### B. Section 3553(a) Factors

Assuming the bases argued by Mr. Burden, either alone or in combination, met extraordinary and compelling circumstances, the court would then be required to consider the 3553(a) factors.  See 18 U.S.C. § 3553(a).  Here, the court has not found extraordinary and compelling circumstances, thereby rendering that assessment unnecessary.  Nevertheless, even if the court had found extraordinary circumstances, it would not have granted Mr. Burden's Motion because of the 3553(a) factors.  The court has previously addressed these factors, see Ruling at 8-10 (Doc. No. 2639); Transcript (Doc. No. 2614) at 64:15-75:13, and will not repeat them at great length.  However, the court notes that Mr. Burden's conduct in this case was among the most serious, long running, violent conduct the court has had before it in its 26 years on the bench.  The passage of over 20 years has not dimmed the court's recollection of Mr. Burden's leadership role in a "group" of over 40 individuals through whom he distributed kilograms of drugs, provided firearms to many in the group to shoot up neighborhoods in Bridgeport, and, ultimately, to murder and maim individuals.  As the court remarked at the resentencing following the grant by Stipulation of the Habeas Corpus Petition, it was "sheer luck" that "more people weren't shot or murdered."  See March 15, 2015

Resentencing Transcript (3/15/2015), at 107:6-107:9 (Doc. No. 2368).  Thus, even if extraordinary and compelling circumstances presented themselves in Mr. Burden's Motion, this court views compassionate release to be inappropriate in light of the 3553(a) factors.

The court notes, in closing, that this case is not one where a defendant, if sentenced now, would face a lower maximum sentence and lower Guidelines due to changes in the law.  Here, Mr. Burden was convicted by a jury, and later by a guilty plea pursuant to a plea agreement, on two counts that had life as the maximum penalty and a Guidelines range of life.  Today, Mr. Burden's maximum penalty and Guidelines range would still be life in prison.  As a result of his Stipulation in this habeas corpus case, he received a 30-year sentence, which he is now serving.  While the court judged that 11(c)(1)(C) Plea Agreement as presenting a very close question, the court concluded it was a sentence which was appropriate under the circumstances.  The court would not have accepted a lower sentence.  Now, eight years later and mindful of all the circumstances Mr. Burden put forward in support of his request for compassionate release, and of the many cases in which murderers have received compassionate release from a life sentence, the court continues to view compassionate release to a lower sentence as not appropriate in light of the 3553(a) factors.

**V.      CONCLUSION**

For the foregoing reasons, Mr. Burden's Motion for a Reduction in Sentence (Doc. No. 2651) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 8th day of January 2024.

                                                 /s/ Janet C. Hall
                                                Janet C. Hall
                                                United States District Judge